UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MAILIN MUY
        Plaintiff,
  v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION; and TWC
PRODUCT AND TECHNOLOGY LLC,

        Defendant.

Case No.:
CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Mailin Muy, individually and on behalf of a class of all persons and entities in Florida who are similarly situated, and files this class action complaint against the Defendants International Business Machines Corporation and TWC Product and Technology, LLC.

### NATURE OF THE CASE

1)    The location targeting industry in America is a $21 billion business. Personal and private information about where consumers live, enjoy recreational activities, shop, and dine, and, and the specific hours at which they do each of those activities is of almost immeasurable value to marketers and advertisers. Under the guise of providing precise and real-time weather information through a mobile weather application, or "app", Defendants in this case have for years been involved in a multi-million dollar scheme to collect, maintain and then profit of consumers geolocation data, all without their knowledge.

2)  TWC Product and Technology, LLC is the internet, mobile, and cloud based arm of the popular "The Weather Channel" television station. TWC is owned and operated by IBM. A significant part of TWC's business is its Weather Channel App, which is used by tens of millions of American consumers every month. Defendants boast that the Weather Channel App is most downloaded weather app in the world.

3)  For years now, TWC and IBM have been fraudulently and deceptively collecting and maintaining Weather Channel App user's private and personal geolocation data. After fraudulently and deceptively inducing Weather Channel App users to grant Defendants access to their personal geolocation data under the guise of providing better weather information, Defendants then track users' locations at all times, day and night, 365 days a year. TWC and IBM do not disclose to user's that they maintain this data, much less that they directly profit from user's geolocation data by transmitting or selling that data to third parties for advertising and marketing purposes. Instead, TWC and IBM inform users data will only be used for the user's benefit to provide them with personalized local weather information. By Defendants' own admission, TWC's primary revenue source comes from collecting, maintaining and then profiting from user location data. In short, unbeknownst to Weather Channel App user's, TWC considers itself "a location data company powered by the weather."

4)  Defendants' conduct in fraudulently collecting, maintaining, and then profiting off of user's geolocation data constitutes a violation of Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*).

**PARTIES**

5) Plaintiff is an adult resident of Florida. She downloaded the Weather Channel App, has used it often and continually, and has been damaged by Defendants unlawful and wrongful acquisition and use of her geolocation data.

6) Defendant TWC is a Delaware corporation with its headquarters in Atlanta, Georgia. TWC owns and operates the Weather Channel App, which is available for download and use on all major mobile platforms, including Apple and Android. TWC does business in the State of Florida and in this judicial district, having provided its Weather Channel App for download for Florida consumers like the Plaintiff. TWC is a subsidiary of IBM.

7) Defendant IBM is a New York corporation with its headquarters in Armonk, New York. IBM does business in the State of Florida and in this judicial district. IBM has owned, operated, and controlled TWC since at least 2016.

**JURISDICTION AND VENUE**

8) This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as both Defendants are citizens of a state other than the state of which Plaintiff is a citizen, and Plaintiff on behalf of himself and the putative class seeks more than $5,000,000, exclusive of interest and costs. More than one hundred members are included in the putative class.

9) Venue in this case is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1441 in the United States Court for the Northern District of Florida, in that a substantial portion of Defendants' conduct which forms the basis of this action occurred in this judicial district. Defendants do business in this judicial district and have received and continue to receive substantial revenue and profits from the excessive fees in this judicial district. Defendants' conduct directly damaged

individuals and entities which reside in this judicial district, including Plaintiff, and Defendants did, or reasonably should have, anticipated that this conduct would subject them to the jurisdiction of this Court.  Plaintiff resides and used the app at issue in this judicial district.  Defendants were subject to personal jurisdiction in this judicial district at the time this action was commenced and are deemed to reside in this judicial district.

## CLASS ACTION ALLEGATIONS

10)    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff asserts a class of individuals and entities nationwide who were harmed by Defendants' deceptive conduct.  That class is defined as:

> All persons who reside in Florida who (1) downloaded the Weather Channel App and (2) Granted TWC access to the user's geolocation data.

11)    Excluded from the class are any person or entity currently in bankruptcy, any person or entity whose obligations have been discharged in bankruptcy, any employee or affiliate of Defendants, and any judicial officer who has presided over this case.

12)    Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise this definition to maintain a cohesive class which does not require individual inquiry to determine liability.

13)    All information necessary to identify the class members and the damages class members incurred is in Defendants' possession or control.

## NUMEROSITY

14)    The exact number of class members is unknown to Plaintiff at this time, but is in excess of one thousand, and can be ascertained through appropriate discovery.

## EXISTENCE AND PREDOMINANCE OF
## COMMON QUESTIONS OF LAW AND FACT

15) There are common questions of law and fact of general interest to the classes. These common questions of law and fact predominate over any questions affecting only individual members of the classes. Among these common questions are the following:

(a) Whether Defendants' disclose to Weather Channel App users that it will collect, maintain, and sell their geolocation data.

(b) Whether Defendants' process for inducing Weather Channel App users to grant Defendants' permission to access their geolocation data is deceptive;

(c) Whether Defendants' representations to Weather Channel App users that the purpose for accessing users' geolocation data is to provide users with personalized and local weather information is deceptive;

(d) Whether Defendants' representations to Weather Channel App users that the purpose for accessing users' geolocation data is to provide users with personalized and local weather information is fraudulent;

(e) Whether Defendants disclose to Weather Channel App users that TWC is "a location data company powered by the weather;"

(f) Whether Defendants' disclose to Weather Channel App users that it sells or otherwise profits from disseminating users' geolocation data to third parties;

(g) Whether Defendants fraudulently or deceptively induce Weather Channel App users to grant Defendants access to their geolocation data in violation of Florida's Deceptive and Unfair Trade Practices Act:

(h) Whether Defendants' conduct is fraudulent under Florida's Deceptive and Unfair Trade Practices Act.

## TYPICALITY

16) The claims of the named Plaintiff are typical of the claims of each class. The total number of members of each putative class exceeds one hundred.

## ADEQUATE REPRESENTATION

17) Plaintiff will fairly and adequately protect the interests of the members of the classes and has no interest antagonistic to those of other class members. Plaintiff has retained class counsel competent to prosecute class actions, and such class counsel are financially able to represent the classes.

## SUPERIORITY

18) The class action device is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the classes is impracticable. The interests of judicial economy favor adjudicating the claims for the Plaintiff classes rather than for the Plaintiff and other class members on an individual basis.

19) Questions of law and fact predominate over any questions affecting only individual members.

## FACTUAL ALLEGATIONS

20) The Weather Channel App is a mobile application ostensibly designed to give users weather forecasts, alerts, and other real-time weather information. It is available for download on Android and Apple devices. It is a "free" download, although as with many apps, an "ad-free" version is offered for a small fee. Defendants description of the app on all platforms is devoid of any reference to geolocation tracking.

21) As demonstrated herein, the Weather Channel App's actual purpose is to collect, maintain, and then provides or sells users' geolocation data to IBM affiliates and other third parties, all without notifying users that it is doing so.

**How Defendants Deceptively And Unfairly Have Mislead Class Members
Into Turning On Geolocation Data Collection**

22)     Immediately after downloading the Weather Channel App, the app asks the user for permission to access the user's "location."  This request does not inform the user that Defendants will be tracking the users every move or that this information will be used for any purpose other than providing the user information about the weather.  Specifically, the request to access the user's location simply states that granting access will result in "personalized local weather data, alerts, and forecasts."

23)     The consent process employed by the Weather Channel App makes absolutely no reference to any additional information the user should read or review prior to providing consent to geolocation tracking.  Nowhere in the consent process is the user confronted with the information that their minute-by-minute geopolitical data will be broadly disseminated by Defendants and that Defendants will make millions disseminating users' geolocation data.  Importantly, the consent process does not direct users to any "Privacy Policy" or "Privacy Settings", so users have no reason to search those voluminous documents for any vague discussions of geolocation data that might be buried within those documents.

24)     Defendants failure to notify users that it is in the business of collecting and selling their personal geolocation data is intentional.  TWC executives have admitted that if consumers knew of the Weather Channel App's true purpose, consumers would be alarmed.

**The Data That Defendants Collect**

25)     Importantly, Defendants do not merely collect users' city or zip code.  Instead, Defendants track, collect, and *maintain* users' precise location and movements on a minute-by-minute and sometimes second-by-second basis, regardless of whether the user currently has the Weather Channel App open.  Nowhere in the consent process do Defendants disclose that they

will be doing anything other than identifying where a user is generally located for the purpose of providing more accurate weather information.

26) The volume of data Defendants collect is immense and valuable. Defendants have boasted that they are able to track users locations and movements with "unmatched accuracy and precision" even speculated that they may possess the world's largest trove of consumer geolocation data. (*See* David Kaplan, The Weather Company Rolls Out Location Marketing Platform to Anticipate Consumers' Movements, GeoMarketing (Oct. 13, 2016)).

**Defendants Transmission Of Users' Geolocation Data To Third Parties.**

27) By failing to disclose the true purpose been their location tracking, Defendants are able to induce the vast majority of Weather Channel App uses to give Defendants access to their geolocation data, day and night, 365 hours a day.

28) Defendants then sell or otherwise transmit virtually all of users' personal geolocation data to third parties without their permission. Some of those third parties are indirectly affiliated with one or both of the Defendants, while others are not, but in both circumstances, Defendants financially benefit, either directly or indirectly, from the sale or other dissemination of this valuable information that belongs to Plaintiff and members of the putative class and which Defendants have obtained through unlawful means. Defendants have even gone as far as to sell this information to hedge funds, who used the data to monitor certain areas of consumer spending. Defendants have even developed their own location driven marketing platform, "JOURNEYfx," through which Defendants further monetize this data.

**FIRST CAUSE OF ACTION**

**VIOLATION OF FLORIDA'S DECEPTIVE AND
UNFAIR TRADE PRACTICES ACT**

29) All allegations and paragraphs in this complaint are incorporated by reference.

30) Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. ("FDUTPA"), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

31) The stated purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

32) Plaintiff and each member of the putative class, as "consumers" under FDUTPA (Fla. Stat. § 501.203(7)), have been harmed by Defendants' unconscionable, deceptive, and unfair acts and practices in collecting, maintaining, and then disseminating to third parties for profit minute-by-minute geolocation data. At no time during the consent process do Defendants inform consumers of their true intent. To the contrary, Defendants go to great lengths to conceal that TWC is, at its core, a geolocation data collection company. In truth, TWC's primary business is not providing consumers with local weather information, but is instead to amass and sell the largest trove of consumer geolocation data in the country.

33) Specifically, Defendants' deceptive practices directed toward Plaintiff and putative class members include:

(a) Failing to disclose during the consent process that Defendants collect users' geolocation information and transmit it to third parties;

(b) Failing to take any other steps to reasonably notify users that Defendants collect users' geolocation information and transmit it to third parties;

(c) Failing to disclose that the true purpose for which Defendants collect users geolocation data is not simply to provide weather data, but to transmit this information to third parties for marketing purpose;

9

(d) Failing to disclose the complete and shocking scope of Defendants geolocation data collection and the disturbing level of detail Defendants' obtain.

(e) Failing to disclose that Defendants do not simply identify user's location, but maintain historical data as to the users movements;

(f) Deceiving users into believing that Defendants collect users' geolocation information to provide users with "personalized local weather data, alerts and forecasts;"

(g) Failing to disclose to users that Defendants collect user's geolocation data for advertising and marketing purposes unrelated to the weather.

34) Defendants' actions or inactions directed toward Plaintiff and putative class members are also unfair. Such actions or inactions include:

(a) Failing to disclose during the consent process that Defendants collect users' geolocation information and transmit it to third parties;

(b) Failing to take any other steps to reasonably notify users that Defendants collect users' geolocation information and transmit it to third parties;

(c) Failing to disclose that the true purpose for which Defendants collect users geolocation data is not simply to provide weather data, but to transmit this information to third parties for marketing purpose;

(d) Failing to disclose the complete and shocking scope of Defendants geolocation data collection and the disturbing level of detail Defendants' obtain.

(e) Failing to disclose that Defendants do not simply identify user's location, but maintain historical data as to the users movements;

35) As a result of the deceptive and unfair practices described above, Plaintiff and each putative class member have been damaged in that their personal, private, and valuable geolocation data has been sold to their parties without their permission.

## PRAYER FOR RELIEF

36) Plaintiff, on behalf of herself and each member of the putative class, seeks compensatory damages for the damages caused to every member of the class by deceptive and unfair conduct in collecting, maintaining and disseminating to third parties every class members private, personal and valuable geolocation data.  Plaintiff, on behalf of herself and each member of the putative class, further seeks an order enjoining Defendants from engaging in this conduct in the future.

**Plaintiff requests a trial by jury.**

Dated: January 6, 2018                Respectfully submitted,

/s/ Nicholas W. Armstrong
Oscar M. Price, IV
Nicholas W. Armstrong
PRICE ARMSTRONG, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Phone: 205.208.9588
Fax: 205.208.9598
nick@pricearmstrong.com
oscar@pricearmstrong.com

Ryan B. Hobbs
BROOKS, LEBOEUF, BENNETT, FOSTER & GWARTNEY, PA
909 East Park Avenue
Tallahassee, Florida 32301
Phone: 850.222.2000
Fax: 850.222.9757
rhobbs@tallahasseeattorneys.com            A